L. Poe Leggette (Wyoming Bar No. 7-4652)
Mark S. Barron
Alexander K. Obrecht (Wyoming Bar No. 7-5442)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-5835
Telephone: 303.861.0600
Facsimile: 303.861.7805
pleggette@bakerlaw.com
mbarron@bakerlaw.com
aobrecht@bakerlaw.com

*Attorneys for Petitioners Independent Petroleum Association of America*
*& Western Energy Alliance*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, and WESTERN ENERGY ALLIANCE, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Case No. 2:15-CV-00043-SWS [Lead Case] |
| SALLY JEWELL, in her official capacity as Secretary of the United States Department of the Interior, and BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) | [Consolidated with No. 2:15-CV-00041-SWS] |
| Respondents. | ) ) ) | |

## RESPONSE IN OPPOSITION TO RESPONDENTS' MOTION TO BIFURCATE AND EXPEDITE BRIEFING ON LEGAL AUTHORITY

Petitioners Independent Petroleum Association of America and Western Energy Alliance

(collectively, "Petitioners") submit respectfully this response in opposition to Respondents'

motion to bifurcate briefing on the merits. *See* Fed. Resp'ts' Mot. to Bifurcate & Expedite

607800737.1

Briefing on Legal Authority, No. 2:15-CV-00043-SWS, filed Nov. 30, 2015 (ECF No. 155) ("Resp'ts' Mot."). Respondents once again ask the Court to resolve – and Petitioners to bear the burden of – a problem entirely of Respondents' own making. Had Respondents timely prepared and lodged a legally sufficient administrative record, the entire case (not just one individual issue) would already be briefed on a full record adequate for adjudication in this Court and appropriate for appeal.

The most efficient way to resolve this case is to have the Bureau of Land Management ("BLM") finally complete the agency's ongoing work on the administrative record, without which the parties cannot brief the merits. Respondents instead suggest a complicated approach that will not save the parties any time or effort. Even assuming Respondents' best case scenario – having this Court or the United States Court of Appeals for the Tenth Circuit determine that BLM does have the authority to issue the final hydraulic fracturing rule – Respondents' approach can only, at best, delay the final conclusion of the district court action, and at worst, have the parties yo-yo between this Court and the Tenth Circuit without reaching any final resolution in this forum.

But efficiency is not the only flaw in Respondents' proposal. Respondents' desire to conduct briefing on the scope of BLM's regulatory jurisdiction *before* BLM lodges the administrative record represents a proposal premised on an incorrect understanding of the evidence relevant to that analysis. Both the Court's preliminary injunction opinion and the arguments Respondents themselves advanced at the preliminary injunction stage demonstrate that the administrative record will be necessary to inform the Court's analysis of the jurisdictional question. Because Respondents' unwieldy proposal is neither necessary nor

efficient and because Respondents rely on a mischaracterization of the nature of the questions the Court will answer when addressing the merits in this case, the Court should deny Respondents' motion to bifurcate.

## I.      RESPONDENTS CONTINUE TO DELAY BRIEFING ON THE MERITS.

On March 20, 2015, BLM issued the final version of its hydraulic fracturing rule at issue here.[1] *See* 80 Fed. Reg. 16,128 (Mar. 26, 2015). On the same day, Petitioners filed the first of these consolidated lawsuits challenging the legality of the rule.[2] *See* Pet. for Review of Final Agency Action, No. 2:15-CV-00041, filed Mar. 20, 2015 (ECF No. 1). Based on the date Respondents received service of Petitioners' Complaint, Respondents understood that the deadline to lodge the administrative record was June 24, 2015. *See* Resp'ts' Mot. for an Enlargement of Time to Lodge the Admin. R., No. 2:15-CV-00043, filed June 12, 2015 (ECF No. 62) ("Resp'ts' First Extension Mot.").

Under this Court's Local Rules, the filing of the administrative record triggers additional deadlines: (i) motions to supplement the record or add extra-record evidence are due fourteen days from the filing of the administrative record, *see* U.S.D.C.L.R. 83.6(b)(3); and (ii) absent proceedings related to the content of the administrative record, Petitioners' opening merits briefs are due forty-five days after the administrative record is filed,[3] *see* U.S.D.C.L.R. 83.6(c). Had BLM lodged a timely and legally sufficient administrative record on June 24, 2015, briefing on

---

[1] Although announced on March 20, 2015, the final rule was published in the Federal Register on March 26, 2015.

[2] On March 26, 2015, the State of Wyoming initiated the second lawsuit. *See* Pet. for Review of Final Agency Action, No. 2:15-CV-00043, filed Mar. 26, 2015 (ECF No. 1). On June 4, 2015, the Court granted the parties' joint motion to consolidate the two cases. *See* Order Granting Joint Mot to Consolidate, No. 2:15-CV-00043-SWS, filed June 4, 2015 (ECF No. 44).

[3] If there is a motion filed under U.S.D.C.L.R. 83.6(b)(3), petitioners "must serve and file a brief within forty-five (45) days after the date either (1) an amended record is filed; or (2) the motion is denied." U.S.D.C.L.R. 83.6(c).

the merits would have been complete and the entire case submitted to the Court on or about September 23, 2015.

On June 12, 2015, having concluded that BLM "did not have adequate in-house staff resources to compile and index the administrative record by June 24, 2015," Respondents requested that the Court extend the deadline for BLM's filing of the administrative record to July 31, 2015. Resp'ts' First Extension Mot. at 4. On June 17, 2015, the Court partially granted Respondents' motion for an extension, ordering BLM to lodge the administrative record no later than July 22, 2015. *See* Order Granting in Part Resp'ts' Mot. for an Enlargement of Time to Lodge the Admin. R., No. 2:15-CV-00043-SWS, filed June 17, 2015 (ECF No. 76). Had BLM lodged a legally sufficient administrative record on July 22, 2015, briefing on the merits would have been complete and the entire case submitted to the Court on or about October 22, 2015.

On July 15, 2015, Respondents moved for a second extension of the administrative record deadline, to August 28, 2015, explaining that "BLM is not presently able to confirm that the collection of documents [the agency had collected] constitutes the complete record." Resp'ts' (Second) Mot. for an Enlargement of Time to Lodge the Admin. R. & Req. for Expedited Consideration at 5, No. 2:15-CV-00043-SWS, filed July 15, 2015 (ECF No. 105). The Court granted Respondent a second extension and, on August 28, 2015, the Department of Justice served the administrative record on Petitioners. *See* Resp'ts' Notice of Lodging of Admin. R., No. 2:15-CV-00043-SWS, filed Aug. 28, 2015 (ECF No. 113). It is uncontested that the record BLM served on August 28, 2015 is not the complete administrative record in this case. Respondents have advised the Court and Petitioners that BLM has voluntarily undertaken a review of the as-lodged administrative record, and that BLM intends to lodge a corrected or

supplemental record at the conclusion of that process. *See* Mot. to Enlarge Time for Resps. to

Mots. to Complete & Modify Admin. R. & Req. for Expedited Briefing & Consideration at 2,

No. 2:15-CV-00043-SWS, filed Nov. 12, 2015 (ECF No. 140).

       Had BLM lodged a legally sufficient administrative record on August 28, 2015, briefing

on the merits would have been complete and the entire case submitted to the Court on or about

November 25, 2015. The parties instead continue to wait for BLM to complete work on the

administrative record. BLM now represents that the agency expects to lodge the updated record

on or before January 19, 2016. *See id.* at 2.

## II.    **RESPONDENTS PROPOSAL IS INEFFICIENT.**

       On May 15, 2015, Petitioners moved for a preliminary injunction, requesting that this

Court defer the effective date of BLM's hydraulic fracturing rule until the resolution of the

merits in this litigation. *See* Mot. for Prelim. Inj., No. 2:15-CV-00041, filed May 15, 2015 (ECF

No. 11). Between May 29, 2015 and June 22, 2015, each of the State and Tribal Petitioners filed

similar motions for a preliminary injunction requesting the same relief. *See* Wyo. & Colo.'s Mot.

for Prelim. Inj., No. 2:15-CV-00043-SWS, filed May 29, 2015 (ECF No. 32); N.D.'s Mot. for

Prelim. Inj., No. 2:15-CV-00043-SWS, filed June 8, 2015 (ECF No. 52); Utah's Notice of

Joinder in Wyo. & Colo.'s Mot. for Prelim. Inj., No. 2:15-CV-00043-SWS, filed June 18, 2015

(ECF No. 79); Mem. in Supp. of TRO & Prelim. Inj., No. 2:15-CV-00043, filed June 22, 2015

(ECF No. 90).

       On September 30, 2015, the Court granted all the pending motions for a preliminary

injunction. *See* Order on Mots. for Prelim. Inj., No. 2:15-CV-00043-SWS, filed Sept. 30, 2015

(ECF No. 130) ("Sept. 30 Order"). In its preliminary injunction decision, the Court held that

Petitioners were likely to prevail on the merits in this action for three independent reasons: (i) BLM lacks statutory authority to promulgate the hydraulic fracturing rule; (ii) the hydraulic fracturing rule is arbitrary, capricious, and contrary to law; and (iii) BLM failed to meet its binding obligation to consult with tribes in the development of the rule. *See* Resp'ts' Mot. at 3-4. Although presumably dissatisfied with all three conclusions, Respondents now wish to divorce the first issue – the scope of BLM's regulatory jurisdiction – from the remaining two, and to proceed in an expedited fashion on that issue alone.

Respondents' proposal makes little sense. Even assuming that the Court were to grant Respondents' motion to bifurcate on the very day that Petitioners submit this responsive memorandum, December 11, 2015,[4] the parties would not complete briefing on the jurisdictional question until at least January 25, 2016.[5] During this time, Respondents would have the Court stay further proceedings on all the other equally dispositive issues the Court addressed in its preliminary injunction.

Yet once a proper administrative record is lodged, the only remaining task for the parties to complete in this Administrative Procedure Act ("APA") appeal is briefing on the merits. Assuming BLM lodges a legally sufficient administrative record on January 19, 2016, briefing on the merits in the case (on *all* issues) will commence on March 4, 2016 and the entire case submitted to the Court on or about April 18, 2016. Respondents have not explained why the parties should indefinitely defer resolution of two-thirds of the dispositive issues in this case to

---

[4] In other words, without waiting at least the seven days, Respondents would typically have to file a reply memorandum in support of Respondents' motion. *See* U.S.D.C.L.R. 7.1(b)(1)(D).
[5] And given the intervening holidays and the likelihood that Respondents may choose to file a Reply memorandum in support of the motion to bifurcate, this date is likely unrealistic.

607800737.1

resolve only one issue when it is in BLM's power to have the entire matter adjudicated expeditiously only a few weeks later.

Respondents appear to suggest that bifurcating the case favors judicial efficiency because "[a] determination that the BLM lacks authority to regulate hydraulic fracturing would be dispositive and would moot the other issues in this case." Resp'ts' Mot. at 5. But even were this Court to make that determination, it is not realistic for Respondents to suggest that finding would end this case. Both Respondents and Respondent-Intervenors have already appealed the Court's preliminary injunction decision. It is no great leap to assume that, should the Court confirm its preliminary conclusions about BLM's regulatory jurisdiction after briefing on the merits, both Respondents and Respondent-Intervenors would appeal that merits decision. The result would be an appeal on an incomplete record and the strong possibility of a remand to address the related administrative and tribal law questions so that the Tenth Circuit has all possible grounds for affirmance and reversal before it when considering this nationally important case. *See Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480 (1978) (acknowledging the "the long-established policy against piecemeal appeals"); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1382 (10th Cir. 2009) (same).

This Court has recognized that "Petitioners desire, and are entitled to, proceed expeditiously with this case." Order Granting Fed. Resp'ts' Mot. To Enlarge Time for Resps. to Complete & Modify Admin. Record, No. 2:15-CV-00043-SWS, filed Nov. 17, 2015 (ECF No. 145). Respondents, however, seek to expedite one element of this case by a matter of weeks while delaying other elements by months or years. The Court should reject Respondents' unwieldy and unnecessary proposal and allow the parties to reach the merits of all dispositive

issues in this case as soon as possible. That is the most efficient way to consider each of the independently dispositive questions and to create the full appellate record necessary to ensure that the case can be resolved without forcing the parties to yo-yo between this Court and the Tenth Circuit.[6]

## III.     RESPONDENTS MISCHARACTERIZE THE RELEVANT INQUIRY.

Contrary to the inference Respondents would have the Court draw, factual development will be essential to all issues submitted to the Court on the merits. Respondents do not appear to seriously contest that factual development will be necessary to resolve Petitioners' arguments advanced under the APA. When considering BLM's position on whether provisions in the hydraulic fracturing rule pertaining to the identification and protection of "usable water" were lawful, for example, the Court's preliminary injunction opinion relied on factual evidence that (among other things) the final rule's requirements represented a change from BLM's existing practices. *See* Sept. 30 Order at 32-33.

But the need for a fully developed factual record is not limited to assessing whether the final hydraulic fracturing rule is arbitrary and capricious under the APA. When evaluating at the preliminary injunction stage whether BLM properly interpreted various mineral leasing statutes as granting the agency authority to regulate hydraulic fracturing, the Court likewise considered

---

[6] Respondents also encourage the Court to bifurcate the case because "the Court's reasoning in the Preliminary Injunction Order could have implications for BLM's management of public lands generally, and for certain aspects of the federal oil and gas program in particular." Resp'ts' Mot. at 6. Respondents have neither identified any "aspects" of any particular program that could be affected nor articulated what any such "implications" might be. And no such implications exist. Petitioners have not challenged in this lawsuit any aspect of BLM's oil and gas program beyond the final hydraulic fracturing rule. To the extent that Respondents have "doubts about the scope of the BLM's legal authority," *id.* at 7, or believe that "BLM's interpretation of [certain] statutes is in some tension with the Court's interpretation," Respondents should comply with the law as the Court has determined it. Respondents' speculative and unspecified concerns about how BLM might have to modify its land management programs to comply with a legal interpretation contrary to the agency's preference is not grounds to adopt Respondents' convoluted procedural proposal.

- 8 -

factual evidence related to BLM's past regulatory practice. *See id.* at 16 (observing that "BLM has not heretofore asserted FLPMA as providing it with authority to regulate oil and gas drilling operations pursuant to 43 C.F.R. Part 3160"). The Court's approach is not surprising, given that Respondents' own moving papers contained numerous fact-contingent arguments to support Respondents' strained understanding of the relevant statutes.

Respondents asserted that the final hydraulic fracturing rule was "necessary to ensure" that BLM has the ability to: (i) manage lands under the principles of multiple use and sustained yield; (ii) prevent unnecessary or undue degradation; and (iii) prevent waste of federal minerals. Resp'ts' Brief in Opp'n to Wyo.'s & Colo.'s Mot. for Prelim. Inj. at 11, No. 2:15-CV-00043-SWS, filed June 12, 2015 (ECF No. 68). Respondents have not, however, explained how they can demonstrate this necessity without technical evidence from the administrative record. Respondents suggest that Congress would have been aware of the historic manner in which BLM and BLM's predecessor agency enforced regulations that governed hydraulic fracturing at the time Congress enacted the Energy Policy Act of 2005. *See id.* at 16-18. Yet Respondents do not cite any regulation that specifically referred to hydraulic fracturing, and do not indicate how historic management of hydraulic fracturing activities under more general regulations can be demonstrated without reference to the administrative record.

Respondents argue that interpreting the Energy Policy Act as precluding BLM's regulation of hydraulic fracturing would lead to "absurd results," because it "would leave a regulatory gap . . . where the relevant States or Tribes are not sufficiently regulating hydraulic fracturing." *Id.* at 18. But whether any regulatory gap exists and whether any federal or Indian lands subject to hydraulic fracturing are left unprotected as a result of an alleged gap are

questions of fact that require analysis of the administrative record. And Respondents contend that the State Petitioners have "failed to establish displacement or interference with state regulations" resulting from BLM's implementation of the final hydraulic fracturing rule. Resp'ts' Brief in Opp'n to N.D.'s Mot. for Prelim. Inj. at 17, No. 2:15-CV-00043-SWS, filed June 19, 2015 (ECF No. 83). Respondents' position overlooks the copious amounts of evidence submitted on just this very question at the preliminary injunction hearing. *See*, *e.g.*, Tr. of Prelim. Inj. Proceedings at 44:15-45:22 (Helms) (June 23, 2015) (identifying examples of how the North Dakota Industrial Commission's management authority over the development of non-federal minerals will be curtailed as a result of the final hydraulic fracturing rule's implementation).

Having previously argued to the contrary, Respondents' new contention that assessing the nature of BLM's regulatory jurisdiction "is an issue of legal and statutory interpretation that can be resolved . . . without the need to reference the voluminous administrative record," Resp'ts' Mot. at 5, is neither correct nor compelling. There are still important factual and legal questions to address, both with respect to BLM's jurisdictional basis for the rule and the propriety of the rule as a matter of administrative law. Because resolving these questions will require BLM to complete its work on the administrative record and the parties to submit their arguments on the merits, the Court should deny Respondents' motion and allow the parties to reach the merits of all remaining issues in this case.

## IV.  <u>CONCLUSION</u>.

Notwithstanding Respondents' dissatisfaction with the results achieved thus far in this litigation, Respondents may not change the rules applicable to this administrative appeal. Because Respondents' proposal disregards BLM's role in fashioning the current procedural

607800737.1

posture of this case, prejudices Petitioners' legal rights, and fails to promote judicial efficiency, the Court should deny Respondents' motion.

Submitted respectfully this 11th day of December, 2015,

 _/s/ Mark S. Barron_
Mark S. Barron
L. Poe Leggette
Alexander K. Obrecht
BAKER & HOSTETLER LLP
1801 California, Suite 4400
Denver, Colorado 80202-5835
Telephone: 303.764.4020
Facsimile: 303.861.7805
pleggette@bakerlaw.com
mbarron@bakerlaw.com
aobrecht@bakerlaw.com

*Attorneys for Petitioners Independent Petroleum Association of America & Western Energy Alliance*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of December, 2015, a copy of the foregoing

**RESPONSE IN OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO BIFURCATE AND EXPEDITE BRIEFING ON LEGAL AUTHORITY** was electronically

filed with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.


*/s/ Susan Quinn*
Susan Quinn

607800737.1